UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DAVID POSEY,<br><br>　　　　　Defendant. | Case No. CR18-280RSL<br><br>ORDER DENYING DEFENDANT'S FOURTH MOTION FOR COMPASSIONATE RELEASE |

This matter comes before the Court on defendant's fourth "Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582([c])(1)." Dkt. # 90. Having considered the motion and the record contained herein, the Court finds as follows:

## I.　　PROCEDURAL MOTIONS

As an initial matter, the Court finds compelling reasons justify sealing defendant's medical records (Dkt. # 91). Defendant's motion to seal (Dkt. # 89) is accordingly GRANTED.

## II.　　BACKGROUND

The Court reincorporates its previous summary of defendant's background:

> Defendant is a [56]-year-old inmate currently detained at the Federal Correctional Institution ("FCI") Yazoo City Medium. On or around June 7, 2018, defendant violated his conditions of supervised released under cause number CR11-00387JLR by changing his address without notifying his probation officer and by leaving the District without permission. PSR ¶¶ 7-8. A warrant was issued for defendant's arrest for the supervised release violations. Id. ¶ 10. He was arrested on June 20, 2018 at a motel in Portland, Oregon. Id. Defendant was accompanied on his trip to Portland by a 19-year-old autistic female ("Witness

ORDER DENYING DEFENDANT'S FOURTH MOTION
FOR COMPASSIONATE RELEASE - 1

1"), whom he had befriended at a local community college. Id. ¶ 8. Witness 1 lacked the ability to make independent decisions about certain life affairs, and her father served as her legal guardian. Id. Defendant and Witness 1 engaged in a sexual relationship, the extent of which is not fully known. Id. ¶ 9. While defendant was in custody following his arrest, he sent several letters to Witness 1 urging her not to cooperate with the authorities and to deny that the two had engaged in any form of sexual relationship. Id. ¶ 10. Defendant was charged with and pleaded guilty to one count of tampering with a witness in violation of 18 U.S.C. § 1512(b)(3).

      Prior to his sentencing, the Probation Office determined that defendant's criminal history category was V, noting his extensive criminal history, which includes convictions for (1) petty theft (id. ¶ 27), (2) breaking and entering with intent to commit a felony (id. ¶ 28), (3) carrying a deadly weapon (id. ¶ 29), (4) first degree theft (id. ¶ 30), (5) felony larceny (id. ¶ 31), (6) felon in possession of a firearm (id. ¶ 32), (7) mail fraud (id.), (8) conspiracy to commit mail fraud (id.), (9) assault and battery (id. ¶ 33), (10) larceny of a bank note (id. ¶ 34), (11) mail fraud (id. ¶ 35), (12) felon in possession of a firearm (id. ¶ 36), (13) unlawful production of identification (id.), (14) aggravated identity theft (id.), and (15) counterfeiting and forging obligations or securities of the United States (id.). On March 22, 2019, the Court sentenced defendant to a 61-month term of imprisonment (37 months for the witness tampering charge to run consecutively with 24 months for the supervised release violations), and 36 months of supervised release. See Dkts. # 50, # 51. Defendant is currently scheduled for release from the custody of the Federal Bureau of Prisons ("BOP") on October 20, 2022. Dkt. # 80 at 4.

Dkt. # 84 at 1–2.

      Defendant filed his first motion for compassionate release on May 13, 2020. Dkt. # 60. The Court denied defendant's motion on the ground that he failed to satisfy the statutory exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A). Dkt. # 67. Defendant filed a second motion for compassionate release on July 23, 2020. Dkt. # 69. The Court denied defendant's second motion on the ground that the Court could not conclude that defendant did not pose a continued danger to any other person or to the community, and the Court agreed with the government's analysis of the § 3553(a) factors). Dkt. # 72. Defendant filed a "renewed motion" for compassionate release—his third motion—on January 14, 2021. Dkt. # 77. The Court denied defendant's last motion because he failed to satisfy the exhaustion requirement, and even if he had exhausted, the Court determined that defendant posed a danger to the

ORDER DENYING DEFENDANT'S FOURTH MOTION
FOR COMPASSIONATE RELEASE - 2

community, and the Court agreed with the government's analysis of the § 3553(a) factors. Dkt. # 84 at 8. Defendant filed his latest motion for compassionate release on August 20, 2021. Dkt. # 90.

### III.   LEGAL FRAMEWORK

The compassionate release statute provides narrow grounds for defendants in "extraordinary and compelling" circumstances to be released from prison early. See 18 U.S.C. § 3582(c). The First Step Act of 2018 amended the procedural requirements governing compassionate release. See id. Prior to the First Step Act's passage, only the Director of the BOP could bring motions for compassionate release. The Director rarely filed such motions. See, e.g., United States v. Brown, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019). Congress amended the statute to allow defendants to directly petition district courts for compassionate release. As amended, 18 U.S.C. § 3582(c)(1)(A) states in relevant part,

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> (ii) . . .
>
> and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission[.]

ORDER DENYING DEFENDANT'S FOURTH MOTION
FOR COMPASSIONATE RELEASE - 3

Prior to passing the First Step Act, Congress directed the Sentencing Commission to promulgate a policy statement defining "extraordinary and compelling reasons" in the compassionate release context. See 28 U.S.C. § 994(t). Section 994(t) provides,

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in [18 U.S.C. § 3582(c)(1)(A)], shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

The Sentencing Commission implemented this directive from Congress with a policy statement—U.S.S.G. § 1B1.13. In relevant part, the policy statement provides,

> **Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)**
>
> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.
>
> **Commentary**
>
> **Application Notes:**
>
> 1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
>    (A) **Medical Condition of the Defendant**—
>
>    (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy

ORDER DENYING DEFENDANT'S FOURTH MOTION
FOR COMPASSIONATE RELEASE - 4

(i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)    The defendant is—

        (I)    suffering from a serious physical or medical condition,

        (II)    suffering from a serious functional or cognitive impairment, or

        (III)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances.**—

    (i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

2. **Foreseeability of Extraordinary and Compelling Reasons.**—For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of

ORDER DENYING DEFENDANT'S FOURTH MOTION
FOR COMPASSIONATE RELEASE - 5

      imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

3. **Rehabilitation of the Defendant.**—Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.

4. **Motion by the Director of the Bureau of Prisons.**—A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A). The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1. The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.

      This policy statement shall not be construed to confer upon the defendant any right not otherwise recognized in law[.]

U.S.S.G. § 1B1.13. The Ninth Circuit has held that U.S.S.G. § 1B1.13 "is not an 'applicable policy statement' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." United States v. Aruda, 993 F.3d 797, 802 (9th Cir. 2021). The Court may consider U.S.S.G. § 1B1.13 in exercising its discretion, but the policy statement is not binding. Id.; see United States v. Van Cleave, Nos. CR03-247-RSL, CR04-125-RSL, 2020 WL 2800769, at *3–5 (W.D. Wash. May 29, 2020) (referring to the guidance of U.S.S.G. § 1B1.13 as "persuasive, but not binding").

## IV. DEFENDANT'S CIRCUMSTANCES

### A. Exhaustion Requirement

A prisoner must establish exhaustion if the government timely raises the issue. United States v. Keller, 2 F. 4th 1278, 1283 (9th Cir. 2021); see also 18 U.S.C. § 3582(c)(1)(A). The government does not contest that defendant exhausted his motion by seeking relief from the

ORDER DENYING DEFENDANT'S FOURTH MOTION
FOR COMPASSIONATE RELEASE - 6

Warden of his facility on June 9, 2021. Dkt. # 95 at 2 n.1 (citing Dkt. # 90-1). The Court finds that defendant has exhausted his motion.

**B.     "Extraordinary and Compelling" Circumstances**

Defendant's motion for compassionate release is based on his heightened risk of developing serious complications if he contracts COVID-19 again while incarcerated at FCI Yazoo City Medium. The Court need not reiterate the widely-known information regarding the symptoms of COVID-19 and the devastating global impact of the virus. As the Court acknowledged in one of its previous Orders, see Dkt. # 72 at 7, COVID-19 has created unprecedented challenges for federal prisons, where inmate populations are large and close contact between inmates is unavoidable. As of September 30, 2021, the BOP reports that 475 federal inmates and 507 BOP staff have active, confirmed positive COVID-19 test results. See COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Oct. 1, 2021). Since the BOP reported its first case in late March 2020, at least 260 federal inmates and six BOP staff members have died from the virus. Id. FCI Yazoo City Medium currently reports zero inmates and zero staff members with active cases of the virus, and no inmates or staff have died from it. Id. One hundred and fifty-seven inmates and sixteen staff members are classified by BOP as "recovered." Id. Approximately 67% of the inmates at the Federal Correction Complex in Yazoo City ("FCC Yazoo City") are now vaccinated. See id. (reflecting that 2,466 inmates are vaccinated at FCC Yazoo City, which comprises FCI Yazoo City Low, FCI Yazoo City Medium, and USP Yazoo City); FCI Yazoo City Low, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/yaz/ (last visited Oct. 1, 2021) (reflecting a population of 1,366 total inmates); FCI Yazoo City Medium, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/yam/ (last visited Oct. 1, 2021) (reflecting a population of 1,462 inmates); USP Yazoo City, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/yap/ (last visited Oct. 1, 2021) (reflecting a population of 868 inmates).

Defendant asserts that he suffers from hypertension, overweight, gout, and hyperlipidemia, Dkt. # 90 at 4–5, which his BOP medical records confirm. See Dkt. # 91 at 3–4. The CDC has identified hypertension and overweight as conditions that can make a person more

ORDER DENYING DEFENDANT'S FOURTH MOTION
FOR COMPASSIONATE RELEASE - 7

likely to get severely ill from COVID-19. See People with Certain Medical Conditions, CDC (Aug. 20, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 1, 2021). Defendant acknowledges that he is at the "low end of the range" related to weight status and COVID-19 risk. Dkt. # 90 at 5. Moreover, defendant conceded in one of his earlier motions that there is a lack of data regarding the impact of hyperlipidemia or gout on COVID-19 patient outcomes, Dkt. # 69 at 17, and defendant has not presented any evidence linking these conditions to COVID-19 vulnerability. Defendant appears to have fully recovered from his previous COVID-19 infection. See Dkt. # 91 at 40 (reflecting a positive COVID-19 test in early November 2020), 13 (recording an encounter date on December 13, 2020, where defendant's vitals were stable and he was "in no apparent sign of distress").

      Defendant received his last Pfizer vaccination against COVID-19 on March 31, 2021, Dkt. # 91 at 28, but defendant directs the Court's attention to a statement by public health and medical experts from the U.S. Department of Health and Human Services that the vaccine's "current protection against severe disease, hospitalization, and death could diminish in the months ahead, especially among those who are at higher risk or were vaccinated during the earlier phases of the vaccination rollout." Joint Statement from HHS Public Health and Medical Experts on COVID-19 Booster Shots, HHS.gov (Aug. 18, 2021), https://www.hhs.gov/about/news/2021/08/18/joint-statement-hhs-public-health-and-medical-experts-covid-19-booster-shots.html (last visited Oct. 1, 2021). Additionally, defendant points out that the CDC recently issued a statement recommending that "people aged 50–64 years with underlying medical conditions **should** receive a booster shot of Pfizer-BioNTech's COVID-19 vaccine at least 6 months after their Pfizer-BioNTech primary series." Dkt. # 99 (citing CDC Statement on ACIP Booster Recommendations, CDC (Sept. 24, 2021), https://www.cdc.gov/media/releases/2021/p0924-booster-recommendations-.html (last visited Oct. 1, 2021)). Defendant is in this age range and has underlying medical conditions (hypertension and overweight), such that the CDC recommendation for a booster shot applies to him. Defendant argues that vaccine protection is only temporary, and that the Delta variant of COVID-19 makes his circumstances "all the more

ORDER DENYING DEFENDANT'S FOURTH MOTION
FOR COMPASSIONATE RELEASE - 8

compelling." Dkt. # 90 at 6–7. The CDC, however, maintains the position that vaccines "continue to be highly effective at preventing hospitalization and death, including against [the Delta] variant." Benefits of Getting Vaccinated, CDC (Aug. 16, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (last visited Oct. 1, 2021). The CDC has not communicated that the initial vaccination series loses all efficacy at a particular time, but rather, asserts that "a booster shot will help *strengthen* protection." CDC Statement on ACIP Booster Recommendations, CDC (Sept. 24, 2021), https://www.cdc.gov/media/releases/2021/p0924-booster-recommendations-.html (last visited Oct. 1, 2021) (emphasis added).

Most courts have found that the Delta variant "does not pose an extraordinary and compelling risk to vaccinated individuals." See United States v. Martin, No. CR 98-178, 2021 WL 4169429, at *6 (E.D. Pa. Sept. 14, 2021) (collecting cases); see, e.g., United States v. Finazzo, No. CR 11-00383 LEK, 2021 WL 4391256, at *3 (D. Haw. Sept. 24, 2021) ("Finazzo's argument that it is possible that she may remain susceptible to infection despite her vaccination status is unavailing."); United States v. Morales., No. CR 19-279 ADM/DTS, 2021 WL 4324560, at *2 (D. Minn. Sept. 23, 2021) ("Any risk of Morales becoming reinfected and seriously ill from COVID-19 has been substantially reduced because he is now fully vaccinated.").

Although it is certainly possible that a prisoner who has been vaccinated may still be able to establish extraordinary and compelling circumstances related in part to COVID-19, such as the defendants in the two cases relied upon by defendant, Dkt. # 90 at 7 (citing United States v. Andrews, No. 3:93-CR-031, 2021 WL 3085314, at *4 (E.D. Tenn. July 21, 2021), amended on reconsideration, No. 3:93-CR-031, 2021 WL 3374985 (E.D. Tenn. Aug. 3, 2021); United States v. Ford, No. 2:10-cr-00292, 2021 WL 2786560, at *3–4 (W.D. La. July 2, 2021)), the Court does not find that defendant has established those circumstances exist here. In both cases defendant cited, the inmates' medical conditions and ages were not the only basis for the courts finding that extraordinary and compelling circumstances were present. Rather, the courts also based their rulings on defendants' "remarkable" rehabilitation. Andrews, 2021 WL 3085314, at *4 ("In tandem with the defendant's cited health conditions, however, the defendant's

ORDER DENYING DEFENDANT'S FOURTH MOTION
FOR COMPASSIONATE RELEASE - 9

remarkable rehabilitation constitutes extraordinary and compelling reasons in this case."); Ford, 2021 WL 2786560, at *3 (referring to defendant seeking "a modification of sentence based on extraordinary and compelling reasons, specifically, his deteriorating health and continued high risk to COVID-19 and its variants, and his remarkable consistent rehabilitation," and the Court being persuaded that modification was warranted in part by defendant's "stellar behavior as a model prisoner"). Defendant's motion, on the other hand, presents no similar evidence of extraordinary rehabilitation. Given the CDC's current position regarding the effectiveness of vaccination, defendant's vaccination status, defendant's previous recovery from COVID-19, and the low infection rate at FCI Yazoo City Medium, the Court finds that defendant has not established "extraordinary and compelling" circumstances to justify compassionate release. Defendant's motion for compassionate release must therefore be DENIED.[1]

## V.   CONCLUSION

For all the foregoing reasons, defendant's motion for compassionate release (Dkt. # 90) is DENIED. Defendant's motion to seal (Dkt. # 89) is GRANTED.

DATED this 12th day of October, 2021.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

---

[1] Having determined that defendant has not made the requisite showing of extraordinary and compelling reasons for compassionate release, the Court need not analyze whether a reduction in defendant's sentence would be consistent with the factors set forth in 18 U.S.C. § 3553(a).

ORDER DENYING DEFENDANT'S FOURTH MOTION
FOR COMPASSIONATE RELEASE - 10